We're advised to call our next case United States versus, and I hope I'm saying the family's name right, Cardassi. You wanna join us up here? Okay. Could you raise your voice a little bit, please? Yes. So, let me ask you this question. I wanna make sure I sort of understand the landscape. If this was a property that the, is it Cardaci or what is it? How do you say it? Cardassi. Cardassi, you're on. Cardassi? Yes. Okay. Cardassi. So, thank you. So, if the Cardassis bought the property in 78 and we're dealing with the statute in 1988, and we're dealing with King and Newman as the sort of common law prior to that, isn't the fundamental issue that this should be treated as a tenancy in common and not tenancy by the entirety? At what point are you suggesting that it should be treated as a tenancy in common? Well, if the purchase preceded the application of the 1988 statute, doesn't that mean that it's not treated as a tenancy by the entirety, or do I have that all wrong? It is treated as a tenancy by the entirety. The remedy that attaching the New Jersey state law credit of separate states would have under New Jersey law, under King and Newman, would be to displace the debtor's spouse and enter into effectively a tenancy in common with a non-debtor's spouse. And the remedies available to a creditor in that situation under New Jersey law are twofold. That creditor could either seek partition of the property, and neither King nor Newman ordered that relief, but both cases indicated that they were related to family. The alternative approach, which is in evidence in Newman and in the Frieda case subsequently, is to compel the non-liable spouse to pay the fair rental value of the debtor's spouse's interest in the property to the attaching creditor, effectively as the price you pay for avoiding ouster from the property that you're not holding on to as a creditor. That's not the situation that we have here. That is, and there's a lot of discussion in the briefs about what would happen if this were a case where the recipient was a New Jersey state law creditor, and the goal was a judgment lien or some other kind of claim on property under state law. This is a federal task force. Exactly. And one of the things that the judge wrote into the opinion, I thought, was, in essence, look, I'm giving this rental alternative remedy, but if they don't pay, if they're not current, you come back, you can sell the thing. Now, am I correct in understanding that they haven't done the things they're supposed to be doing? Then, you know, the question that immediately hit me, Ms. Zitoveta, is why are you here arguing over the legal principles when in the district court you have an immediate remedy that takes you right to what you want because the district court said, in essence, come back to me if they're not doing what they're supposed to do, and you can sell the house. In fact, Your Honor, that's not what the district court said. It did deny the foreclosure claim, specifically without prejudice, but there were several notices of default that were filed on the district court docket after they immediately and then promptly filed the rental order. There was no summary proceeding authorized to enforce the lien. The government practically had to remove it. Did you go back to the district court and ask for relief? To go back to the district court and start over, Your Honor. To re-clean and re-argue the entire foreclosure claim. It's not when you say you'd have to reboot. You're saying that you didn't think it was within your power to go back and say, Your Honor, based on the things the court itself indicated in the opinion, we want to have you re-look at foreclosure. In other words, even if it meant you had to file another complaint with the institute, and I'm not sure you would have. It's something you could have approached the district court about and asked the district court about. Why isn't that, given the court's statement that it was without prejudice, and what I read to be a pretty strong indication that if they failed in their obligations, you were going to have an opportunity. Why didn't you go back? I don't get that. There are several reasons. This is not the kind of case where a New Jersey district court has attempted to circumvent the rights of the government under Section 7403 by correcting a state law remedy instead. 7403 is not that kind of plan for the government. It's not if they treat you as a state law creditor and that remedy doesn't work for you, then you can come back and have your rights under federal law. I think the United States of America and federal tax rules is enforceable primarily under the federal tax code. So the answer is you kind of think the District of New Jersey is off the reservation here and you want to get them back in. Primarily, Your Honor, because of the valuation question. That's not something that could be resolved by going back and seeking a sale of the house. Let me ask you about the valuation question. You believe that there should have been a 50-50 determination regarding valuation, correct? No, Your Honor, because the precedent is court system. Well, okay, in Popke. But let's look at the Rogers test. Is it your position that valuation, I mean determination of how the proceeds would be split, if you will, that that is necessary as part of the Rogers, consideration of the Rogers factors? The Rogers factors ask the court to consider the character and value of the liable and non-liable interest in property. Of the possessory and fee interest. Not simply that. Future interests are also valued under that. Where in Rogers does it say that? It says the present possessory interest or fee interest. But in 711, Rogers says the core factor is the relative character and value of the non-liable and liable interest held in the property. And courts have not limited that to present possessory interest. All right, so your view is the court does have to do a valuation? No, Your Honor. But our view is that the court should consider all of the skips in the bundle when deciding who has which rights in property that is subject to say under 7143. And it's your view that survivor interest, life estate, those type of interests, life expectancy, those things need to be considered or not. Your position is intended by the entirety to be strictly 50-50. Those are not inconsistent outcomes. You are considering the survivorship interest of the tenants by the entirety when you reach a 50-50 value. Not really. How so? If the court says, and it does say in Rogers, you need to take into account actuarial reality, how can you square that with saying it's 50-50? Because 50-50 is saying who cares what actuarial reality is. Actuarial reality is irrelevant. It's 50-50. It is not irrelevant, Your Honor. But that is the result that is reached when you account for, particularly on these facts, the equivalent life expectancies of the entire property. Okay, well then you've just answered the question, right? You do have to take account of life expectancy. You can't just default to 50-50 because you could have Hugh Hefner and bunny number 87 with a 65-year gap and a real serious difference in actuarial expectancy, right? We would not urge the court to look at their actuarial life expectancies in those circumstances. We would instead urge the court to look at the common law treatment of that tenancy on dissolution. Wait a second. So if the court says in Rogers, account for actuarial reality, your position is account for it unless there's a big gap and then ignore it? No. No, Your Honor. That is not our position. Let me make clear first that in Rogers, you were looking at Texas Homestead, which is officially a life estate. There is a measuring life and there is no future interest. So the length of the measuring life matters when you are valuing that type of stated interest. It matters with life estates too, right? It matters with life estates too, but it does not matter with tenancy by the entirety because the disposition of the rights of the spouses and tenancy by the entirety have already been resolved at common law and did not depend on the common law. So the rights of survivorship don't matter? The rights of survivorship do not matter. And I refer this court to the Sixth Circuit reasoning in the Bonn case, which said that if life expectancies in the common law calculation on the 50-50 distribution upon, for example, a contested divorce where you may have a vast age disparity among the co-tenants by the entirety who are now severing that tenancy, the common law may account for that. And the distribution of the proceeds of the sale of that tenancy would reflect that there was some legal and compensable interest correlated to the life expectancy of the co-tenants. You don't see that in common law in New Jersey or in anywhere else. How about explain to me why in the, and I hope I'm saying this case name right, it's the Pletz case out of the Ninth Circuit. In that case, if I understand, and that's what you cite in your reply brief, the Ninth Circuit, at the government's urging, at the urging of the IRS, took the position that you do have to take account of the life expectancies and you should use a joint actuarial table to figure those things out. If I misunderstood the case or has the government changed its mind, what's going on? What has happened since Pletz is that the Supreme Court has decided crap. And what you see in Pletz is similar to what you saw in the Jones case in the District of New Jersey. Before Kraft made clear that the federal tax claim attached to the tenancy by the entirety, the government basically had reports to various other remedies to attempt to assert its lien claims. It could not simply stand firm and say we have a lien on this property. What does that have to do with the common law? What does that have to do? I mean, a moment ago you were saying you don't value the life estates because the common law doesn't value the life estates under these circumstances. That has nothing to do with whether Kraft clarified that you could attach directly based on a federal lien, does it? My recollection also is that Pletz was a bankruptcy case. It was not a Section 7403 case. It doesn't matter. No, it does matter, Your Honor, because you're not just adding the tenancy by the entirety. You were valuing the interests. It doesn't matter whether the context is bankruptcy or it's a dissolution or it's a forced sale. The question is the value of the interests that the propertyholders have. And that doesn't make any difference. In theory, it shouldn't, should it? Whether that regime that you're operating under while you're making the valuation is bankruptcy or some other umbrella of the law, right? It does because what you are valuing is what someone is going to take away from the process, not what they've done. Precisely. And in Pletz, where you're determining the extent of a secured claim on property on bankruptcy estate, there is the question before the court is different than how do you, what is the extent of the compensation or what is the extent of the advice that you pass to the propertyholders. And also, because you did not have the guidance of Kraft at that point, and the weight of the case law coming out of it. Kraft says nothing about valuing property, right? This says nothing about that. That's right. Okay. But as the taxpayers cite in their brief, the Rogers dictum on valuation was something that the Supreme Court was thinking about in Kraft. And they were saying, well, is it always going to be 50-50 or is there going to be an actuarial valuation? And the government was at best noncommittal on that. And they said, well, in Rogers, there was an actuarial valuation. It presented to the court the reason why Rogers is distinguished on this premise. Plus, we would submit it's distinguishable because you are not dealing with a context where the common law would have liquidated the tenancy and distributed the proceeds. We're just talking about, I understand the context is different, but I still haven't, and maybe it's because there isn't a good answer to it, I still haven't fathomed your answer about why valuation would be different. Valuation is valuation. You come in, you assess what the interests of the parties are, and you put a value on it, hopefully with some level of expertise and rationality. And I'm still not understanding, and if you've got a rationale, I'd like to hear it, why the position the government actually advocated in Pletz or Peltz, I've heard it, Pletz, should come to a different valuation than it should here. It's not Kraft because Kraft says nothing about valuation. It's not bankruptcy because that doesn't make values different. I don't get it. I just don't get it yet. I would respectfully distinguish your second statement of saying that the value in bankruptcy is potentially different from the number that you're reaching in a 70-point reduction because you're not disrupting the tenants. You're merely determining the extent of the superiority. Well, that may be, maybe we're just talking past each other. Then what you're saying is you valued a different thing, which is still about valuation. The method of valuation is what I'm talking about. And you came up with a method of valuation which seemed fair and sensible in Pletz. You said use a joint actuarial table. I take it that your argument there was it's got everything baked into it. That actuarial table has the math in it. It'll help you understand what the values are. Use that. That's a safe, fair approach. Here you're saying don't do that. 50-50. Game up. Respectfully, Your Honor, the actuarial table, even in Pletz, is only a best-in-approximation with respect to any given individual. The government does not submit actuarial tables as mathematically precise for triangulating the life expectancy or a valuable life expectancy of any given individual because that information is not baked into the table. And we've explained that in greater detail in our opinion. What you're evaluating in a Section 74-3 case is informed by how an estate is distributed on the solution common law. What you're evaluating in a bankruptcy is not. And 50-50 comes from the common law. And the circuit has already adopted it. Well, we adopted it in the context where a property was sold, right? I mean, in Popkey's case, we were evaluating a pile of cash. We were not evaluating going forward. This doesn't work if we're talking over each other. So let me try to finish the question. I understand Popkey to be saying this is a pile of cash, 50-50. We're not talking about a pile of cash. We're talking about a house, and we're talking about future interests in that property, right? Aren't those very different things? They are not under this analysis because the tenancy by the entirety was preserved in the sale proceeds to Popkey's residence. There are rights of survivorship and there are rights to block liquidation, I believe it was cash, but if it were, for example, security or some other personal thing. Those rights that are accorded to them in common law in the tenancy by the entirety survive in the personal tenancy. It's not limited to property or even residential property. Any property held by the entirety is subject to all of the sticks in the bottom. And you're looking at the value of all of those sticks when you're reaching a valuation in common law. And the common law has consistently said that when you are selling this, the distribution is 50-50 because those rights are equal regardless of the life expectancy in regards to how you determine the life expectancy of the tenancy. Okay. All right, thank you. Mr. Monzo. May it please the Court, Your Honors, Anthony Monzo, attorney representing the Ellings and Forsettowns, Gary and Beverly Corgasi. May I reserve a few minutes for rebuttal as Forsettown? The answer to that is yes, but if you get up and you start saying something new that's not actually a rebuttal to a rebuttal, then I'd like you to sit down. All right? Because we're not, you know, you can have a true rebuttal if you want it, but you can't have a chance to just talk about other stuff. So, if that's how you want it, it's okay by me. Thank you, Your Honor. If I may... Yeah, that should show us two minutes off this clock now. Your Honor, the government is ignoring one of the most important steps in the bundle when it comes to valuing the property of a spouse in a tenancy-buying party situation, and that is the life estate. It's not just a right of survivorship, but it's a right of survivorship with a right of possession for the remainder of the life of each spouse. Given that that's true, how can you justify the district courts accounting for the value of the life estate for Mrs. Cordasi, but then saying, we're not taking account of the value of the same thing that inherits in Mr. Cordasi? I think Judge Mandel did explain his position on that, Your Honor, and he... I'm asking for you to justify... You need to explain how it can be fair, equitable, reasonable in evaluation to say, I'm paying attention to one spouse's life estate. I'm not paying attention to the others. In this case, Your Honor, the only interest that the government needs to compensate for is Mrs. Cordasi. But they're equivalent. The interests are equivalent. Are they not? They are equivalent. If they were seizing Mrs. Cordasi's interest, Mr. Cordasi's interest would be valued the same way that Judge Mandel valued Mrs. Cordasi's interest. So it's 86%, 14% the other way if they were going after Mrs. Cordasi? It's a sort of a heads-I-win-tails-you-lose game for the government? Well, Your Honor, in Rogers, I think Justice Brennan recognized that there could be a disparity and even said in that decision that when you add up the values separately, they could significantly exceed 100%, or they could be significantly less than 100%. I guess the question is, why is the life tenancy, or the life estate, calculated in Mrs. Cordasi's favor yet not offset by a separate but equal calculation of Mr. Cordasi? Mrs. Cordasi is the person whose property is being taken by a reason of forced sale, and that was— Well, both their properties are being taken by the forced sale, right? I mean, she's not uniquely situated there. It's a joint property, and it's being taken if it's taken by a forced sale. So that's the difficulty that we're kind of talking around. We're trying to get you to grapple with, if you can come up with one, a reason in the law why the district court could say, yeah, I'm counting your life estate, Mrs. Cordasi, but I'm not counting yours, Mr. Cordasi. What in the law can you point to that says that's okay? What case, what statute, what anything can you point to that says that's okay? Rogers, Ron. Rogers said that— Rogers does not say that. I've read that case, and it certainly doesn't say that. Go ahead, though. Take me to the language you think says that. Well, Justice Brennan, Rogers said—first he said that we must read the statute. We have it in front of us. You can tell us where you're reading from. Cool. First Justice Brennan says on page 677, we must read the statute to contemplate not merely the sale of the domain of the taxpayer's interest, but the sale of the entire property that belongs to the United States as a claim of interest in it, and the recognition of third-party interest through a mechanism of judicial evaluation— 677 is the syllabus. It's not the opinion. But even if that were the case, that doesn't— I mean, even if you were reading from the opinion and not the syllabus, that doesn't say that you can ignore the rights of one of the co-tenants as you're evaluating the value of the interests of the parties. It just seems to me that the— Let me ask a question. The first factor, the first Rogers factor, Judge Simandl used the 8614 numbers in considering the first factor. I read the first factor differently. I read the first factor as saying you look— and this is all—the Rogers test has to do with the interests of third parties. It's not simply husband and wife. It can be, you know, six people own a piece of property. And the first factor says you look at the interest of the one, and you say would partial sale be prejudicial? Or in terms of is that possible? Here it seems to me partial sale would be prejudicial because nobody's going to buy Mr. Cardassi's half interest in this property and live with Mrs. Cardassi. It's just not happening. Whereas in another situation where there's six people who own a piece of property and they're all investors and one of them's delinquent, well, you know, somebody may buy a one-sixth interest in that piece of real property, you know, as an investment. Isn't that what the first factor's about? How is it that a valuation of 8614 has anything to do with the first factor? Well, maybe, Your Honor, because a partial interest would yield a much lower percentage of the property. So that is a factor that would not yield a great result and a fair result on a sale. And compared to the tax liability, it wasn't relevant. I think the fourth factor was really where Judge Simandl articulated the 8614 split when he looked at the relative values of the interest of each property. Okay, but it makes a huge difference. You've got four factors. If you're kind of rigging two of them versus the valuation, that's going to impact, is it not? Yes, Your Honor, and I still go back to Rogers and that's what... But it really has to do with the ability to sell. Even when the partial interest would be worth less sold separately than sold as part of the entire property. That doesn't mean you look at the valuation. That means, you know, what's a willing buyer going to pay? Isn't that the answer? Right. Partial interest, Your Honor? Yeah. What's a willing buyer going to pay? That has nothing to do with the 8614, does it? But it has to do with the four factors. No, no, no. I'm talking about the first factor. The willing buyer's going to pay for somebody's interest has nothing to do with how you split up the proceeds, does it? No, it doesn't. Okay, thank you. That's all I wanted. Yeah. So... So don't we have to tell Judge Simandl at least that he needs to go back and redo Rogers on that basis alone, if nothing else? Well, I think what's left of that is what is a partial interest worth? And will the sale of a partial interest as opposed to the entire interest be the best result for everybody involved? And you can conclude that no, based on the fact that... Based on what you just acknowledged was an erroneous application, right? Because the first factor is what are you... Is the government prejudiced by trying to sell a partial interest? It isn't at all about valuing the property and dividing it if you were selling it all together. That's a different factor, different analysis, but he inserted that into the first factor, right? Yes, sir. Okay. So if he... So since the remedy that was ultimately given was an exercise of equitable discussion, is it... How could we get behind that and uphold it? Maybe there's a way, but you need to explain how. When the legal analysis that led him to that involved... We've identified one which you agree with, a legal error. That is, he applied factor one in a way that just... It isn't factor one. I don't agree with that, Your Honor. I think he applied factor one to make a determination that the sale of a partial interest would not yield a significant sum to the government. Who is going to buy a property subject to the right of survivorship of Mrs. Gardner? Exactly. Plus, as this court said in the VA... No one. Her right of possession. No one. Yeah, that's true. He did say that. And then under factor one, he went on to do evaluation of the property as if it was the division of the property, the sale and division of the property, which is erroneous. We've all agreed. I guess what I'm asking is, in exercising equity, it's got to be based on an appropriate legal foundation if he missteps. Can we still say, well, it was a misstep, but it was a harmless misstep, and we think he would exercise his equitable discretion the same way anyway, so it's all good? Can we do that, or do we have to send it back? I don't say... I'm not acknowledging it was legal error. I thought he made the right analysis in the first factor. Evaluation really was the fourth factor, where he looked at the relative interests of the parties, and he valued, as this court instructed in the VA, that it needs to be based on the survivorship right plus the possessory interest. The example in Rogers came to almost the same conclusion in terms of the percentage amount. Why don't you take on the argument from the government, if you would, that we're bound here to make a 50-50 split. Popke tells us we have to do it, and that's what New Jersey common law tells us we have to do too. He's made a New Jersey common law argument. What's your response? I disagree, Your Honor. I thought you would, but... Well, I have something to support that. Frieda and Newman, pre-1988 statute, said any sale of a property is subject to the possessory rights and the survivorship rights of the non-debtor's spouse under common law. That was acknowledged by this court in a VA on a government potential. It was a hypothetical, so it's dictated in the case, but they said if the government were to force a sale of property, the sale would take place, and it would be subject to the survivorship rights and the right of possession of the non-debtor's spouse. But here maybe we don't need to decide it so much, because it ends up being 50-50 anyway, because based upon the survivorship, based upon the actuarial tables, each of them has an equal chance of surviving, correct? But they also have a right to stay in the entire property. Yeah, they both do. Each equally. But if I may, Your Honor, just call your attention to the example of Rogers, which came to a percentage of 82% for a spouse at age 70. Okay. It applied the Arkansas actuarial tables, and for the government to argue that it's just an approximation, they do it all the time. Their tables are in Section 2031 of the regulations, which they value partial interest, life estates. They use these tables. Nobody's disagreeing with the premise here for purposes of questioning the actuarial tables. You keep going back to what the district court did, which is to say it's okay to look at her life estate, but not his. And that's what's puzzling, at least to me. The tables that were used. Yeah. Because the government needs to compensate Mrs. Pardesi for her deprivation of a property right. And that's what the case is about, and that's what Rogers said. And Rogers went a great lengths to say that in order to avoid a takings, we need to conduct a valuation. Sure. I think that we need to value the rights of the non-debtor spouse. So if you value the rights of the non-debtor spouse, and the non-debtor spouse has the same survivorship rights, the same life estate rights, the same possessory rights, and the same actuarial life expectancy, if all those things are the same, does it just math and logic tell you we're at 50-50? No. Okay. And I say that only because that's what the Supreme Court of Rogers said. It could be worth significantly more when you add the parts together. And the government has acknowledged that in Reverend Williams as well. All right. Well, we'll have you back maybe on rebuttal, rebuttal, depending on what they say in rebuttal. We'll find out. Thank you. Isabella. Mr. Worsted, we didn't actually reach the process of your question. So I'm just sort of a little bit depressed. Well, maybe nothing if you don't start raising it. Rogers provides that an interest sold separately when it's part of a community of interest and property may, when you add all of those up, total more than 100%. In some international rights, they're not sold separately. This is a distinction also in a case like Kletz, where you are looking at the interest of one spouse in the back. When you are liquidating an entire tenancy by the entirety of the purchase, 74 and 3, all of the rights are extinguished by the inmates, and the purchaser gets clear-cut. That's why you have a constitutional question. That's why the extent of the federal tax loan is important. Can the assume for the sake of discussion that we thought actuarial data mattered, all right? And that we thought that Kletz made sense when it said use a joint actuarial table. And we used that or suggested to the district court it should use that. Does the district court have to do some calculation based on that of a present, of future values and then discount it to present values? Or is that kind of operation somehow, when you're talking about the percentages of the property value, somehow contained in the methodology of using a joint actuarial table in the first place? That was a terribly asked question. Did you follow that? What I believe you're asking, Your Honor, is if the person used the correct actuarial tables, would the discounting happen automatically or would there be additional effort for the court? Yeah. I am not an actuary. I believe the answer to that question is yes, but... It's baked in, right? Is it baked in? I think that when you're looking at two measuring lives, the tables definitely correlate for the statistical odds of one person pre-deceasing the other are determined differently than the statistical odds of one person living to a certain age. Sure. So then what you'd have to do, I guess, is the court would have to make some kind of evaluation of life estates, survivorship rights, and then it may have to discount that to present value. But once it had come to an overall evaluation, if it uses the joint actuarial table, all it does is, at that point, it's math. You take those tables and you figure out what the relative interests are and you multiply. Have I understood that right? I believe that that's correct. In the bankruptcy context, that's what you see as a lower value in something that is not to be sold separately, but to be valued separately. But we don't really need to address the actuarial aspect in this case, do we? That is correct, because even if the actuarial tables were applied, it is an undisputed matter of record that the parties have equivalent life estates. So each of their life estates and each of their remainder interests were identical. So how does the fourth factor come out? In a tenancy-binding entirety, it is basically a four-month review, and we have suggested that, that Rogers loses a lot of its expected value when you're looking at a joint estate with reciprocal life interests, because the first Rogers factor, the prejudice to the government, is always going to be constant, and that's as Wilbur described, which is you cannot sell a marital interest in property if there is no market for that. The second Rogers factor, the legally recognized expectation of the non-liable spouse, that will go in favor of the spouse somewhat, although under New Jersey law, it's not as strong as it is other laws. Since perhaps nationwide, with respect to the federal creditor, no one has that expectation anymore. It is now a matter of law that federal taxing uniquely in some jurisdictions can attach to a tenancy-binding entirety. New Jersey, as Your Honor has noted, people stay off their account. All right. And then the only Rogers factor that is instructive in a tenancy-binding entirety is the prejudice to the non-liable spouse. But that's supposed to be extreme, or not standard prejudice. So wouldn't the drill be that we send it back to Judge Sanandle saying, do a do-over? We don't feel that that's necessary. The factual evidence was fully developed. There was a multi-day trial. It is clear what the prejudice is. So we would do the analysis on the first instance of the court of appeals? The analysis has been done. No, but it was done improperly. But the only factual error can be corrected by applying the precedent of this court. Well, but we don't usually do that in the first instance. If we think the district court did something, balanced some factors incorrectly, we usually send them back for a do-over. Because it is a balancing. Yeah, is your position that no rational judge could come out and say that it's appropriate for there to be a rental arrangement instead of a forced sale? Because unless that's your position, if we agreed with you there was legal error, we'd have to send it back for a re-weighing of the equities, right? Well, if that's the approach that the court feels is necessary, we would suggest simply that no further factual development is necessary. And if the court is simply reapplying the law, an equitable determination does not come into play here for the reasons that we've explained. The Rogers test doesn't have a view to the equities that try to incorporate state law remedies as less inclusive alternatives to the rights of the federal government. Okay, we've got you. Thanks very much. Nothing was said, Mr. Monzo, about your side of that. So we've got the arguments. We'll take it under advisement. Thank you, counsel, for your briefing and your argument today.